SOUTHERN COTTON OIL COMPANY *v.* THOMAS, executor.

(*Syllabus by Russell, C. J.*)

1. If possible, the instructions of a trial court should fit the particular evidence in a case like a skilful tailor fits a suit to a human form. But an inapt expression, or a slip of the tongue, promptly corrected by the use of appropriate language in the same connection, is not necessarily error. There must be conjunction of harm with error, in the common acceptation of the latter word, to constitute error in a legal sense.

2. There may be a recovery of damages arising from the maintenance of a nuisance, although all of the acts alleged to be contributory causes of the nuisance be not proved. If any one of the acts alleged is clearly shown to have had that effect, damages may be recovered for the injury, if any, arising from the one tortious act.

3. An assignment of error which complains of a particular instruction of the court can not be considered, when it fails to point out how or for what reason the instruction complained of does not correctly state the law. It was not, for any reason assigned, error for the court to tell the jury that they would "ascertain the depreciation by reason of the acts alleged against the defendant that has been caused to her property."

4. In charging the jury the trial judge is not required, especially in the absence of a timely and appropriate written request, to call the attention of the jury to each particular contention of the contesting parties which may be developed by the evidence.

5. No party can complain of a finding in his favor.

6. It is error for a judge to omit to instruct the jury on any issue in a case; but, in the absence of a timely written request, it is not error for the court to omit to instruct the jury as to mere contentions of either party which may be developed by the conflict of the evidence, or merely by argument of counsel. Issues, in a strictly legal sense, arise from the pleadings; and though a contention may be well sustained by evidence, it may not rise to the dignity of an issue, by reason of a failure to embody the contention in the pleadings so as to make it an issue.

7. A proper instruction to the effect that the jury could not find damages unless they found (in the case pending) that the defendant had maintained a nuisance was an instruction merely as to a preliminary conclusion necessary to be reached by the jury before entering upon a consideration of the question as to whether any damages should be given; and it was not necessary, in a verdict finding a particular amount as damages resulting from the maintenance of a nuisance, to incorporate an express finding that a nuisance had been maintained. Verdicts are to be given a reasonable intendment; and even if it had been necessary to include a specific finding as to the existence of a nuisance, the trial judge would not have been authorized to set aside the verdict rendered, because the maintenance of the nuisance was absolutely and necessarily implied in the finding of damages.

8. A verdict is never excessive, in legal contemplation, when it is within the range of the evidence which authorized a recovery by the plaintiff. The power of setting aside the verdict of a jury on the ground that it is excessive is one to be used very sparingly.

9. There was sufficient evidence to authorize the verdict; and upon the review of the charge as a whole, it is our opinion that "A charge, torn to pieces and scattered in disjointed fragments, may seem objectionable, although when put together and considered as a whole it may be perfectly sound. The full charge being in the record, what it lacks when divided is supplied when the parts are all united. United they stand, divided they fall."

No. 3120. FEBRUARY 16, 1923.

Equitable petition. Before Judge Worrill. Terrell superior court. February 4, 1922.

(Statement by the Reporter.)

In the summer of 1920 the Southern Cotton Oil Company discontinued the operation of its cotton-ginnery and grist-mill in the City of Dawson, and installed in the same building machinery for cleaning and shelling peanuts taken into the factory from cars on a railroad-track adjacent. Mrs. V. A. Thomas occupied as a residence a house on a lot 171 by 218 feet, abutting on three streets, a corner of which lot is about 75 or 100 feet from the factory, with a street running between them; the residence-house being something more than twice as far from the factory. On November 6, 1920, Mrs. Thomas brought suit against the company, for injunction and damages; alleging that the injury on account of which she sued was irreparable, and that she had no adequate remedy at law; and praying that the company be enjoined from continuing to maintain a nuisance by the operation of its factory, and that she have judgment against it for $5000 as damages from decrease in market value of her house and lot to the extent of 50 per cent., as a result of the alleged nuisance. She asked also for $1000 for expenses of litigation and attorney's fees; alleging that the maintenance of the business was wilful and in bad faith. On November 16, at interlocutory hearing, the judge granted an order restraining the company as prayed, but postponed full effectiveness of the order for two weeks, in order to give the company (as it desired) opportunity to abate the alleged nuisance. Mrs. Thomas died in December, 1920, and her son and executor, Seab. J. Thomas, became the plaintiff. At the trial on November 23, 1921, the court submitted to the jury the questions (1) of permanent injunction, and (2) of damages

limited to decrease in market value of the plaintiff's property, caused by the nuisance should the jury find that it was maintained; excluding recovery of any other element of damages. The jury made no finding as to injunction, but found for the plaintiff $1000 as damages. A motion for new trial was overruled, and the defendant excepted.

The alleged nuisance consisted of: (1) noises from a steam whistle, and from the exhaust of the engine, and from the running machinery; (2) emissions of quantities of dust, smoke, cinders, crushed hulls, and other refuse blown into the air and deposited in layers on and in the plaintiff's residence, windows, furniture, flowers, food, etc. There was testimony by several witnesses, tending to support the plaintiff's contentions as to these matters; and testimony to the effect that the value of the plaintiff's property as a residence (from nine to ten thousand dollars) was decreased as much as half by the operation of the peanut-shelling factory, although it appeared that the property was returned by Mrs. Thomas and by her executor for taxation at a valuation of $1500. In its answer and testimony adduced the defendant points out that the plaintiff's property is situated in that part of Dawson where all the manufacturing enterprises of that city are located; that just across the street are a lumber-yard and planing-mill operated by steam-engines, to and from which daily go automobile-trucks and wagons that pass within fifty feet of the residence; that next to defendant's factory is a cotton-compress which, when in operation, makes more noise than any other works in the city; that still further are another planing-mill and ice-works; that two railroads operate freight-trains and passenger-trains in this section of the city, and largely contribute to the prevalent dust and smoke; that the streets running by the plaintiff's property are not paved or sprinkled; that the market value of real estate generally has decreased in the city for the past year and longer; that defendant has used all reasonable means and taken every precaution to prevent the escape of dust, smoke, cinders, and other refuse, and the shutting of its factory would not eliminate these annoyances from the plaintiff's property, the factory being conducted and operated under the best methods known; that it removed the whistle on plaintiff's first complaint of it, and has not since used it; etc.

1.  The motion for new trial assigns error on an instruction to the jury, as follows: "If you believe, from a preponderance of the evidence in this case, that the plaintiff was the owner of the house and lot described in the petition, at the time alleged therein, and that she had been using it as a home for the time stated, and if you further believe that afterwards the defendant erected a plant adjacent to her property, and at the time alleged in her petition operated a peanut shelling plant on its premises near by, and if you further believe that on account of the nearness of the plaintiff's property to the peanut-shelling plant of the defendant, that the whistle connected with the machinery of the defendant was blown in such a manner and such times as to disturb the quiet and comfort of the plaintiff's home or habitation, if you further believe that the comfort of her home and habitation was disturbed by noises caused by the exhaust from the machinery and the engine operating the same, as alleged in the petition, if you further believe that in the operation of such shelling machinery in the defendant's plant the peanut hulls, sand, dirt, sticks, and other refuse were blown from there in the open air, and if you further believe that in the unloading of the cars from the track of the Central of Georgia Railroad Company, as such nuts were being unloaded from the cars by suction and carried into the building, dust, dirt, sand, and refuse from such nuts were blown into the air, and if you further believe that the atmosphere became filled with dirt, dust, smoke, and peanut-hulls and refuse arising from the operation of said peanut-mills from said plant, if the same was carried into the home and dwelling house of the plaintiff, thereby disturbing the comfort of the plaintiff, and rendering her house and her dwelling therein uncomfortable, and polluted the air she breathed, thereby destroying its comfortableness as a habitation and home, I say if those conditions, or some of those conditions, as alleged by the plaintiff against the defendant, was the cause of it, thereby destroying the comfort of her home and rendering it less suitable for the purposes of a home, then you would be authorized in finding that the operation of said mill as alleged was a nuisance." The errors specified are: (*a*) That the instruction as a whole was not applicable to the evidence, was prejudicial to the defendant, and was confusing and misleading; (*b*) that it tended to con-

vey to the minds of the jury that there was a whistle, whereas the evidence showed that the peanut-shelling factory had no whistle, and, while the defendant and other concerns in the vicinity had whistles attached to other machinery, the blowing of these would not authorize a finding against the defendant in this suit; (c) that it was erroneous to authorize the jury to base their finding on what was "alleged in the petition;" (d) that the expression as to the nuts being unloaded from cars and carried into the building "by suction" was inapplicable, as the evidence conclusively showed that they were not so unloaded; (e) that it was error to authorize the jury to find that the operation of the mill was a nuisance if "some of those conditions as alleged by the plaintiff was the cause of it," etc.

2. The court charged: "Should you find that the defendant operated its mill in such a manner as to constitute a nuisance, according to the instructions the court has given you, and that nuisance affected, disturbed, and injured the plaintiff in the manner alleged in her petition, damaged her property as it is alleged, it would be your duty to find for the plaintiff damages in such amount as the evidence shows it has caused to her property by reason of the maintenance of such nuisance." Error is assigned, because the damages recoverable in this case were damages to the property alone, and it was misleading and prejudicial to allow the jury to find damages on the ground that the nuisance "disturbed and injured the plaintiff."

3. The court charged: "In arriving at such damage as was done to her property, if any, you will first ascertain what the value of her property described in the petition was before the establishment of such nuisance, if you find one was established by the defendant. You would then ascertain the depreciation, by reason of the acts alleged against the defendant, [that] has been caused to her property, and what its present value is now as diminished by the acts of the defendant, if the evidence shows you that the value of her property has been diminished by any of its acts, and if there has been any diminution of value in her property up to the present time; such diminution, before the defendant would be liable, must have been caused by it; and the difference in the price of the property at the time of the creation of the nuisance by the defendant, if there was any, and its

present value, would be the measure of damages, provided such depreciation was caused by the defendant." The errors assigned are, (*a*) that the instruction does not correctly state the law; and (*b*)' that it told the jury to find damages by reason of the acts *alleged* against the defendant, the allegations having no evidentiary value and no bearing on the measure of damages.

4. The court charged: "You would be authorized to find damages if there has been any depreciation of the value of the property, the market value of the property; but you could not find for a depreciation of the rent. If there has been a depreciation of the property itself, the house and lot, its value, you can find damages for that depreciation, that is, the depreciation of the property in value." It is contended that this instruction was inapplicable to and unauthorized by the evidence, which showed that other conditions, with which defendant had no connection, contributed to the depreciation; and that the charge did not confine the damages to the particular acts of the defendant.

5. The court charged: "If you believe, from a preponderance of the evidence in this case, that the peanut-shelling plant of the defendant, as was operated, was a nuisance, if you believe from the evidence that a continuance of the operation of the peanut mill will continue as a nuisance to the plaintiff's property, then you would be authorized to find that the injunction be continued and made permanent." Error is assigned; but, as already stated, the jury made no finding as to injunction.

6. Error is assigned on the omission of the court to charge the jury (without request by counsel, so far as appears) that they would not be authorized to find damages for any depreciation in the value of the property caused by or contributed to other conditions or other enterprises; or any damages for annoyance, disturbance, or inconvenience to the plaintiff. It is contended that these issues were sharply drawn, and required an affirmative and specific instruction by the court.

7. It is contended that the verdict is contrary to the law as given in charge, to wit, that damages could be found only on condition that the jury found that the operation of the peanut-mill was a nuisance; and that the jury did not so find.

8. Finally, it is contended that the amount of damages found is excessive; that the evidence showed that defendant made im-

provements on its plant after the suit was commenced, and authorized a finding that they abated any nuisance that may have existed before; that the damages recoverable could not exceed the depreciation in value for the time the nuisance existed; and that the court's failure to instruct specifically on these contentions as illustrated by the evidence was prejudicial to · the defendant's rights.

*R. R. Jones,* for plaintiff in error.

*Yeomans & Wilkinson,* contra.

RUSSELL, C. J.  The complaint contained in the first special ground of the motion for a new trial, if that ground be considered without reference to the charge as a whole, is not well founded, although the judge referred to one or two matters which were not specifically referred to in the evidence.  It is a well-settled rule that the instructions of a court are improper if inapplicable to the evidence.  If possible, the instructions of a trial judge should fit the evidence as snugly as a skilful tailor could make a suit of clothes to fit the human body.  Counsel for plaintiff in error insists that it does not appear from the evidence that there was a whistle at the defendant's peanut mill; and that the expression that the peanuts were unloaded and carried into the building by suction was inapplicable, because the evidence showed that they were unloaded with shovels.  However, there must be a conjunction of injury with the mere error, to constitute error in its full legal sense as applied to courts of review, and it does not appear that because the judge incorrectly stated the manner in which the peanuts were removed, or because he was mistaken in saying that the noise from the mill engine or boiler was caused by a whistle, either or both of these misstatements as to the evidence caused or could cause any injury to the plaintiff in error, or that they could in anywise have affected the probable finding of the jury.  It was not error for the judge to tell the jury that they might find that the operation of the mill was a nuisance if " some of those conditions, as alleged by the plaintiff, was the cause of it."  One is not debarred from showing the existence of a nuisance if he proves that any one of several alleged conditions brought about by the defendant created a nuisance, although he may not be able to prove all of the alleged facts. Viewed in connection with other portions of the charge, we do

not think there was any harmful error in the first excerpt from the charge of which complaint is made. There must be not only latent *error,* in the sense in which that word is commonly used, but concurrent injury, to create error of law — such error as to warrant reversal. Trivial errors are barren until vitalized by conjunction with substantial injury.

2. We do not think there was any error in the excerpt from the charge contained in the second special ground of the motion for a new trial. It is true that the word " disturbed " as complained of was inapt, but it is apparent that the immediate use of the words " and injured " following it corrected any misapprehension on the part of the jury that might have arisen from the use of the word " disturbed," which immediately preceded it. The judge in charging the jury evidently saw that he had used an inapt word, and immediately used the only proper word applicable to the case at bar; and this practice is so universal in every conversation in all the daily affairs of life that it would be quite a strain to hold that the jury were misled merely by the use of an inapt word for which a proper word was substituted in the same breath. We think this little error was, in a juridic sense, harmless. We bear in mind the rule that where a really materially erroneous instruction is given, the presumably evil effect can not be cured except by express reference at the time to the error and a plain and clear withdrawal of the erroneous instruction from the jury. But we do not deem that such an instance is now before us. However, if we be in error as to this, any apparent error was removed by the instructions given throughout the charge, especially upon the point that the plaintiff in the case could only recover for injuries to her property.

3. The exception contained in the third special ground will next be considered. The exception as contained in (*a*) is not sufficiently specific to present anything for our consideration. It is assigned as error that the instruction does not accurately state the law, but it is not pointed out wherein the law is not correctly stated, nor what is the correct law, in the opinion of the plaintiff in error. The complaint in (*b*) raising the point that the court used the words " acts alleged against the defendant," in telling the jury that they would " ascertain the depreciation by reason of the acts alleged against the defendant that has been caused

to her property," does not complain, though it seems to intimate, that this was perhaps an expression of opinion on the part of the court. But the exception is insufficient to raise that point. The assignment of error simply raises the point that the allegations have no evidentiary value and no bearing on the measure of damages. If we were to sustain this exception, we would impeach the intelligence of the jury, and of juries generally; because there is no reason to misunderstand, or to believe that the jury misunderstood, that nothing was further from the mind of the court than to give the jury an instruction that they were authorized to find a verdict upon the allegations themselves instead of upon the proof adduced in support of those allegations.

4. There was no error in the excerpt from the charge of which complaint is made in the fourth ground, heretofore quoted in the report of this case. The instruction was applicable to and authorized by the evidence, and, in so far as it related to the depreciation of the rent, was more favorable to the defendant than was authorized. The fact that the court did not call attention to special conditions which the defendant insists contributed to the depreciation was not error, certainly not in the absence of an appropriate request for instructions upon that subject.

5. It is not necessary to rule upon the exception to the charge upon the subject of the injunction, inasmuch as the jury did not find in favor of an injunction, and it does not appear from reading the charge as a whole that the instruction as to the injunction could in any wise have affected the finding of the jury as to damages.

6. The assignment of error in the sixth ground can not be sustained, for the reason, as stated in the fourth division of this opinion, that there was no request, although it may be that the issues were sharply drawn, as insisted by the plaintiff in error.

7. An assignment that the verdict is contrary to the law as given in charge by the court amounts to no more than a general assignment that the verdict is contrary to law. In the seventh ground the plaintiff in error insists that inasmuch as the jury did not find specifically, in the verdict itself, that the operation of the peanut-mill was a nuisance, they were not authorized to find damages. It appears to us that this is a non sequitur. The judge correctly instructed the jury that damages could be found

only on condition that the jury found that the operation of the peanut mill was a nuisance. This was an instruction as to their ultimate conclusion from the evidence as to whether the peanut mill was or was not a nuisance; an instruction that unless they came to a conclusion from all the evidence that it was a nuisance, the plaintiff could not recover. But he was not required to instruct them that they should incorporate in their finding as to this preliminary result in their consideration of the case, that it should be entered in the verdict. And he should not have done so.

8. The verdict is challenged as being excessive. We think the trial judge properly overruled this ground of the motion for a new trial. A verdict is never excessive, in legal contemplation, unless it is so grossly out of proportion with the evidence which authorizes any recovery at all by the plaintiff, as to the shock the moral sense. The jury, under proper instructions, are the judges of the credibility of the witnesses in actions for damages, as in all other cases; and if the finding of the jury is within the range of the testimony, the court can not enter into the question of whether the damages are excessive or not, unless the amount is so large as to lead the court to believe that the finding was due to prejudice or bias, either on the part of the witnesses or on the part of the jury. The power of setting aside a verdict of a jury upon the ground that the finding is excessive is one to be very sparingly used; and since, in this case, there is evidence on the part of witnesses unimpeached that the diminished value of the property was over $4000, and the jury only found damages to the amount of $1000, we do not think the present case presents an instance in which the lower court should have interfered, or one in which our intervention should be granted. Though there is much conflict in the testimony, there is sufficient evidence to authorize the verdict; and when the entire charge is considered as a whole, there was no material error in the trial. As said by Chief Justice Bleckley in *Brown* v. *Matthews, 79 Ga.* 1 (4 S. E. 13). "A charge, torn to pieces and scattered in disjointed fragments, may seem objectionable, although when put together and considered as a whole, it may be perfectly sound. The full charge being in the record, what it lacks when divided is supplied when the parts are all united. United they stand, divided they fall."

*Judgment affirmed by operation of law.*

RUSSELL, C. J., BECK, P. J., and GILBERT, J., favor an affirmance. ATKINSON, HILL, and HINES, JJ., favor a reversal.