## 27614. LANGRAN v. HODGES et al.

DECIDED SEPTEMBER 11, 1939.

*John M. Slaton, James J. Slaton,* for plaintiff in error.
*G. Seals Aiken,* contra.

SUTTON, J.   Mrs. J. H. Hodges brought suit against G. F. Langran and Seaboard Loan and Savings Association Inc. to recover damages on account of injuries sustained by her because of the negligent operation of an automobile by Langran, an employee of the defendant corporation.   On the trial of the case the court directed a verdict for the defendant corporation, on the ground that the evidence showed that the automobile driven by Langran, which collided with the car in which the plaintiff was a guest, was at the time being used by him for his own pleasure and against the positive instructions of his employer.   The jury returned a verdict in favor of the plaintiff against Langran, who brought the case to this court by bill of exceptions.   The only assignments of error, as argued or insisted on in the brief of counsel for the plaintiff in error, relate to one ground of a special demurrer and certain special grounds of the motion for new trial, hereinafter dealt with.   In this court the plaintiff in error filed a motion to make Seaboard Loan and Savings Association Inc. a party defendant, the said

corporation acknowledging service of said motion and giving its consent to being made a party. The said motion is accordingly granted, and the Seaboard Loan and Savings Association Inc. made a party defendant.

■ The defendant in error filed in this court a motion to dismiss the writ of error on certain grounds, all of which are without merit, and the motion is denied.

■ It is contended by the plaintiff in error that the court erred in overruling a ground of special demurrer to the allegations of the petition that the defendant Langran "suddenly, and without warning, darted out about twenty feet in front of plaintiff's auto-mobile from a line of traffic going south on the opposite side of Spring Street, running rapidly across a line in the center of said street several feet and into and against the left front and left side of plaintiff's automobile with terrific force, in open violation of" a certain quoted ordinance of the City of Atlanta, the ground of the objection being that the allegations were immaterial in that the ordinance was inapplicable to the facts set forth in the petition. It is fundamental that the office of a special demurrer is to point out defects with particularity; and inasmuch as it is not shown how the allegations are immaterial or the ordinance inapplicable, the court did not err in overruling this ground for any reason assigned.

■ The first special ground of the motion for new trial complains that the court erred in charging the jury: "I charge you, gentlemen, in passing upon the question of pain and suffering you may consider the decrease in her ability to work, decrease in her earning capacity, loss or impairment of her powers or faculties, any scars, disfigurements, and damage to her body resulting from such injuries; the shortening of life from actual worry and pain necessarily caused by the injuries is also an element which you may consider in passing upon the question of suffering and pain. As to the amount, gentlemen, the law declares that there is no standard by which to measure it except the enlightened conscience of impartial jurors," it being contended that the charge was error and confusing, for the reason that the court failed to explain that the plaintiff, being a married woman, could not recover for a decrease in earnings, in that such earnings would belong to her husband, and because by the use of the words "decrease in earning capacity"

immediately after the words "decrease in her ability to work," the jury could have believed that "decrease in earning capacity" was an element of damage to be considered in addition to the "decrease in ability to work." The plaintiff did not sue for loss of earnings as a separate item of recovery, based on any earnings she had been receiving, and the court did not intimate that such recovery could be had. It is, however, well settled that even a married woman may recover, as an element of pain and suffering, for decrease in ability to work or decrease in earning capacity. In *Atlanta Street Railroad Co.* v. *Jacobs,* 88 *Ga.* 647, 652 (15 S. E. 825), in which the plaintiff was a married woman, it was said: "It seems to us that the loss or material impairment of any power or faculty is matter for compensation irrespective of any fruits, pecuniary or otherwise, which the exercise of the power or faculty might produce; and irrespective, also, of any conscious pain or suffering which the loss or impairment might occasion. Every person is entitled to retain and enjoy each and every power of body and mind with which he or she has been endowed, and no one, without being answerable in damages, can wrongfully deprive another by a physical injury of any such power or faculty, or materially impair the same. That such deprivation or impairment can be classed with pain and suffering was ruled by this court in *Powell* v. *Railroad Co.,* 77 *Ga.* 200 (3 S. E. 757); and inasmuch as enforced idleness or diminished efficiency in offices of labor is calculated to give rise to mental distress, it is not error to describe the thing by its effects and call it pain and suffering." This principle of law has been enunciated so many times by the appellate courts of this State that other citations are unnecessary. Nor can it reasonably be said that the jury conceived the idea that for one loss they could calculate an amount for "decrease in ability to work" and "decrease in earning capacity." Properly construed, the court was merely informing the jury of different items which might be considered by it in estimating the amount to be allowed for pain and suffering, as to which "the law declares that there is no standard by which to measure it except the enlightened conscience of impartial jurors." A wife might earn money, to which her husband would be entitled, or she might work within the home and receive no reward except the satisfaction which comes from a sense of having well performed her household duties, but the wrongful deprivation by another of either oppor-

tunity is alike cause for damages as an element of pain and suffering. In *Atlanta & West Point R. Co.* v. *Haralson,* 133 *Ga.* 231, 235 (65 S. E. 437), it was said: "If a plaintiff seeks to recover for pecuniary losses resulting from loss of time or permanent diminution of capacity to labor and earn money, he should introduce evidence on which to predicate such a recovery. But it has been held in this State that permanent diminution of capacity to labor is an element of damages for the consideration of the jury, in determining the amount of such recovery, along with evidence as to pain, suffering, disfigurement, or the like, although no pecuniary value is proved by the evidence. It has been said that the loss of capacity to work is in the nature of pain, though no pecuniary loss be shown." (Citing.) It is the fact of impairment or loss of ability to work, with or without pecuniary compensation, that is considered by the jury in determining the amount to be allowed for pain and suffering, and no evidence as to earnings is necessary in such calculation, the only standard of measurement being the enlightened conscience of impartial jurors. The charge was not error for any reason assigned.

■ The second special ground complains that the amount of the verdict was excessive; that the amount of $7500 awarded by the jury was not authorized by the nature of the plaintiff's injuries. It has been many times ruled that the verdict can not be held to be excessive unless manifestly resulting from prejudice, bias, or other corrupt motive of the jury. Nothing appears in the record to indicate that the jury was influenced by any improper consideration. While it is strongly contended by the plaintiff in error that the amount was not justified under the evidence, we can not say that it was not authorized. The plaintiff was shown to have been seriously and permanently injured. After the collision she was confined to her bed for about nine weeks. As a result of the injury she suffers from diplopia or double vision of the left eye, nervousness and inability to walk steadily, is at times awkward in speech, and is entirely incapacitated to attend to her household duties, all of which conditions did not exist before her injury. It is argued that there was testimony from her eye doctor that nature "would come to the rescue," and, if the plaintiff did not wear a flap over the injured eye, would induce the plaintiff to look only through the right eye. Nevertheless the plaintiff would still be deprived

of the use of one eye. Even if as jurors we would not have been disposed to award so large a sum, still it can not be said that the jury was not authorized to return a verdict for $7500. In *Pratt Engineering &c. Co.* v. *Trotti,* 142 *Ga.* 401, 404 (5) (87 S. E. 401), it was said: "While the verdict in this case is large, we can not say that it is entirely without evidence to support it. And, as was said in the case of *Southern Railway Co.* v. *Wood,* 114 *Ga.* 140 (39 S. E. 894, 55 L. R. A. 536): 'It may be that if we had been upon the jury we would have taken the view that a less amount would be full compensation for the wrong; but the law has reposed in the jury the right to deal with these matters, and we have no authority to interfere with their finding on the subject, when it has been approved by the trial judge, unless the amount involved is so great as to suggest bias and prejudice on their part.'" (Citing.) In *Candler* v. *Smith,* 50 *Ga. App.* 667, 677 (9) (179 S. E. 395), it was said: "'The question of damages being one for the jury, the court should not interfere, unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias.' Civil Code (1910), § 4399 [1933, § 105-2015]. Cases of personal injuries and the like are interfered with by this court only when the verdicts are exorbitant or very inadequate. *Central Ry. Co.* v. *Perkerson,* 112 *Ga.* 923, 933 (38 S. E. 365, 53 L. R. A. 210); *Central Ry. Co.* v. *Minor,* 2 *Ga. App.* 804, 806 (59 S. E. 81); *S. A.-L. Ry. Co.* v. *Bishop,* 132 *Ga.* 71 (63 S. E. 1103). Excessive damages are such as shock the moral sense to such an extent as to lead to the belief that the jury were actuated by undue or improper motives or influences. *Central R. Co.* v. *DeBray,* 71 *Ga.* 406, 422. The approval of the verdict by the trial judge is given great weight by this court in passing upon the excessiveness of a verdict. *Holland* v. *Williams,* 3 *Ga. App.* 636 (60 S. E. 331). That a verdict is generous is not a reason for setting it aside. *Bullard* v. *Rolader,* 26 *Ga. App.* 742 (107 S. E. 548); *City of East Point* v. *Hendrix,* 27 *Ga. App.* 485 (108 S. E. 623). A verdict will not be disturbed by this court merely because it is a large one. *S. A.-L. Ry. Co.* v. *Vaughn,* 19 *Ga. App.* 397 (91 S. E. 516)." See also Code, § 105-2015; *Southern Colton Oil Co.* v. *Thomas,* 155 *Ga.* 99, 108 (117 S. E. 456). Although the verdict in the present case might be called generous, there is nothing in the record to suggest that the jury was actuated by undue or improper motives or influences.

■ The third special ground complains of a portion of the charge to the jury, in which the court stated certain contentions of the plaintiff, among which was that the plaintiff contended that the defendant Langran "suddenly, and without warning, darted out about twenty feet in front of plaintiff's automobile from a line of traffic going south on the opposite side of Spring Street, running rapidly across a line in the center of said street several feet and into and against the left front and left side of plaintiff's automobile with terrific force, in open violation of the following valid and existing ordinance of the City of Atlanta in force and effect at said time and place, the said section of the ordinance quoted, gentlemen, being as follows: 'Unless impracticable due to obstructions, or when passing another vehicle, operator shall drive upon the right half of the roadway at all times,'" it being contended that the charge was error for the reason that it was wholly inapplicable to the facts in the case, and authorized the jury to find the defendant guilty of negligence per se in violating said ordinance, whereas the evidence showed no violation thereof. In this portion of the charge the court was merely stating the contentions of the plaintiff. It is not reversible error to state the contentions of the parties as made by the pleadings. *Georgia Power Co.* v. *Sheats,* 58 *Ga. App.* 730, 742 (199 S. E. 582), and cit. Moreover the judge in the present case explained to the jury that the pleadings were not evidence and were not to be considered as such. Consequently this ground of the motion is without merit.

■ The fourth special ground complains that the court erred in rejecting from evidence a certain sketch made by one of the defendant's witnesses, it being contended that it illustrated the testimony of the witness that the car in which the plaintiff was riding was being driven on the wrong side of the street, and that said sketch tended to show that the proximate cause of her injury was the negligence of the driver of the car occupied by her. The only testimony by the witness as to the sketch was as follows: "The picture [the sketch] looks like some of my scribbling. I did that. This is my car against this right-hand side of the street there. I drove over there because this other car was coming at me at this angle, and I had to keep him from hitting me. This is Dr. Hodges' car." The collision in question took place on the Spring Street viaduct in Atlanta. Manifestly, the sketch, or "scribbling" as

termed by the witness, was not even remotely identified by him as representing the location of the collision or the position of the cars at the time of the collision; and in fact the witness did not pretend to have witnessed the impact. He testified that "I heard the crash behind me, and I stopped" and went back. The court did not err in rejecting this sketch or "scribbling" as not sufficiently identifying the scene of the collision or position of the cars.

■ The fifth ground complains that the court erred in excluding from consideration of the jury a certain envelope and enclosed letter addressed to the defendant, G. F. Langran, at Miami, Florida, but without any street or office designation, it being contended that such evidence was material and would have benefited the defendant, because it tended to account for his absence from the trial of the case, in view of the argument of counsel for the plaintiff calling the jury's attention to the failure of the defendant to appear and testify in his own behalf. The only purpose of introducing the envelope and enclosed letter, with reference to the trial of the case against the defendant, would be to show that an effort was made by counsel to notify the defendant to appear at the trial, and that he did not appear because he did not receive the notice as addressed. But the defendant was charged with the legal duty of keeping advised as to the progress of the litigation, notwithstanding the fact that he was represented by counsel. *Lovelace* v. *Lovelace,* 179 *Ga.* 822 (177 S. E. 685) ; *Beavers* v. *Cassels,* 56 *Ga. App.* 146, 153 (192 S. E. 249), and cit. If, instead, he hazards the risk of being notified by his counsel in time to attend the trial, and an envelope containing the notice is insufficiently addressed to him and is returned undelivered, such papers are not admissible in evidence for the purpose of showing an excuse for the defendant's non-appearance, especially where it is not shown that his counsel could not have addressed him more definitely than at "Miami, Fla.," a city of considerable population and size. Moreover, it is to be gathered from the brief of his counsel that the real reason Langran did not attend the trial was that he wished to avoid being subjected to service in another suit growing out of the same collision, and another reason advanced is that he was financially unable to come to Atlanta. No reversible error is shown in this ground of the motion.

■ Another ground of the motion for new trial is based on al-

leged newly discovered evidence which counsel aver would prob-
ably on another trial of the case produce a different result. It is
made to appear that after the trial of the plaintiff's case in June,
1938, there came on to be heard the case of her husband against the
defendants, and that during an intermission one of counsel for the
defendants obtained from Dr. Zack W. Jackson, who had testified
in both cases, a memorandum from which he had refreshed his rec-
ollection; that counsel discovered, upon examining the memoran-
dum a notation by Dr. Jackson, that the plaintiff, Mrs. Hodges,
had a mild condition of arterio sclerosis and a mild condition of
pellagra; that subsequently he obtained from Dr. Jackson an
affidavit, introduced on the hearing of the motion for new trial,
in which he deposed that Mrs. Hodges had a mild case of arterio
sclerosis and an advanced condition of pellagra; and it is con-
tended that had the jury been informed of these facts they would
not have awarded as much as $7500 damages, which amount, it is
contended, was necessarily arrived at on the assumption that Mrs.
Hodges' disability was due entirely to the injuries sustained in the
automobile collision, whereas arterio sclerosis and pellagra mate-
rially contributed to her disability. The plaintiff introduced coun-
ter affidavits, one from Dr. Jackson, in which he did not specifically
retract the statement in his first affidavit that Mrs. Hodges was
suffering as indicated when he examined her after the automobile
collision, but in which second affidavit he asserted that he believed
that Dr. W. Frank Wells, who had been the personal physician of
Mrs. Hodges for many years and was a general practitioner
(whereas the affiant was an eye specialist) was in a better posi-
tion than he to judge whether or not Mrs. Hodges was afflicted
with pellagra; and he further deposed that since counsel for the
defendants had obtained from him the affidavit which they had
offered in evidence, he had examined Mrs. Hodges and would now
state affirmatively that she has no condition of pellagra whatever.
Dr. W. Frank Wells' affidavit was to the effect that he had been
Mrs. Hodges' physician for many years, and that she has never
had and does not have pellagra. It appeared from the affidavit of
Dr. Jackson, offered in evidence by movant, that his former opin-
ion that Mrs. Hodges had pellagra was based in part on his hav-
ing observed at one time that she had an eruption on her arm and
elbow; and in the affidavit of Dr. Wells it was explained that Mrs.

Hodges had been brought to him by her husband under the fear that a condition of pellagra existed, but that he learned that she had been in her yard with her arms exposed to a hot sun, and that some eruption or discoloration had resulted, and that upon treatment such condition disappeared, and that she had no pellagra whatever. An affidavit from Dr. J. H. Hodges, husband of the plaintiff, was to the same effect. An affidavit from Dr. C. C. Aven showed that he had treated her in 1935 and 1936, and had never found any evidence of pellagra, and that she did not have pellagra on November 5, 1938, which was only five days before the affidavit was executed.

Although the original statement by Dr. Jackson, in his affidavit procured by counsel for the defendant, as to Mrs. Hodges having in a mild degree arterio sclerosis, or hardening of the arteries, does not seem to have been contradicted, it could hardly be said that this fact alone would probably produce a different result on another trial of the case. It may readily be seen from the affidavits referred to that counsel for the defendant could not reasonably hope to prove by the affiants that Mrs. Hodges ever had or now has any condition of pellagra; and we can not say that a "mild" condition of arterio sclerosis would probably cause the jury on another trial to return a verdict for an amount less than $7500. Without citing authorities it may be stated that the grant of a new trial on the ground of newly discovered evidence rests in the discretion of the trial judge, and that for this court to hold that his discretion has been abused it must affirmatively appear that the evidence submitted by affidavits is such as would probably produce a different result on another trial. From a close examination of the record we do not think that this has been made to appear. Accordingly, the discretion of the judge in refusing a new trial on this ground will not be disturbed.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*