38087. LANIER *v.* O'BEAR, by Next Friend.

DECIDED APRIL 21, 1960—REHEARING DENIED MAY 16, 1960.

*Abbot & Abbot,* for plaintiff in error.

*Charles H. Hyatt, Howard & Hyatt, Wm. Schley Howard, Jr , Marshall L. Fountain, J. V. Malcolm, Jr.,* contra.

NICHOLS, Judge. 1. Special ground numbered 4 of the amended motion for new trial complains of the admission of quoted testimony, but does not show who the witness was. "The first special ground of the motion is incomplete and cannot be considered because the name of the witness whose evidence was objected to is not made to appear therein. See *Trammell* v. *Shirley,* 38 *Ga. App.* 710, Rule 10, page 714 (145 S. E. 486)." *Holsenbeck* v. *Arnold,* 75 *Ga. App.* 311, 312 (43 S. E. 2d 348). Therefore, this ground of the amended motion for new trial cannot be considered.

2. In special grounds 6 and 7 error is assigned on excerpts from the court's charge (1) that it is negligence per se to operate an automobile in excess of 35 miles per hour in a residential area, and (2) that it is negligence per se to operate an automobile on the public highway in excess of 60 miles per hour.

There is no contention that such excerpts did not state correct principles of law or that such excerpts were not authorized by the pleadings and the sole contention of the defendant is that there

was no evidence to authorize such charge. " 'To warrant the court in charging the jury on a given topic . . . it is not necessary that the evidence should shine upon it with a clear light. It is enough if glimpses of it be afforded by the evidence. Truth is often dim but is truth nevertheless. Frequently amongst the facts best proved is one which no witness has mentioned in his testimony, such fact being an inference from other facts.' *Brown* v. *Mathews*, 79 *Ga.* 1 (4 S. E. 13)." *Everett* v. *Clegg*, 94 *Ga. App.* 725, 730 (96 S. E. 2d 382).

There was evidence that the defendant was from 548 to 600 feet up the road when the plaintiff started across the road on his bicycle, that the defendant's automobile skidded approximately 120 feet before coming to a stop, that it hit the plaintiff with enough force to throw him into the air about a foot and a half above the hood of the defendant's automobile, that the plaintiff then struck the windshield of the defendant's automobile, and that the plaintiff hit the ground about 18 feet from the point of impact. While there was evidence that the defendant was traveling at a speed from 20 to 35 miles per hour, the evidence shown above was sufficient to authorize the excerpts from the charge complained of.

3. Special ground 8 assigns error on the following excerpt from the charge: "Now, Gentlemen, there is a degree of care that is chargeable to the *defendant*. In ordinary cases, the *defendant* must exercise ordinary care for the prevention of injury to himself. But there is an exception to that rule where a child under the age of fourteen years is concerned. Now, this is the law with reference to the degree of diligence required of a child under the age of fourteen. I charge you that children under fourteen years of age are chargeable with contributory negligence resulting from a want of such care as their mental and physical capacity fits them for exercising, and they assume the risk of those patent, obvious and known dangers which they are able to appreciate and avoid."

The use of the italicized words "defendant" in the opening sentences of the excerpt rather than "plaintiff" is assigned as error. It is palpably clear that the use of the word "defendant" in the opening sentences was a mere "slip of the tongue" and

in view of the remainder of the excerpt quoted could not have misled the jury. The plaintiff, according to the evidence adduced on the trial, was 12 years old at the time of the incident and the defendant 54 years old, and when the whole excerpt complained of is considered together the jury could not have been misled by the "slip of the tongue" by the trial judge.

Error is also assigned on the remainder of the excerpt from the charge because it is contended that there is no exception to the rule that a "person must exercise ordinary care for the prevention of injury to himself."

"Due care in a child of tender years is such care as its capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and situation under investigation." Code § 105-204. In *Streetman* v. *Bussey*, 25 *Ga. App.* 694, 696 (104 S. E. 517), where recovery was sought because of injuries to a boy 13 years old who was struck while crossing a street, it was said: "In this case, however, the plaintiff, being a child less than fourteen years of age, was not bound to exercise the ordinary care exacted of every prudent man, but was bound only to exercise due care according to his age and capacity. *Kendrick* v. *High Shoals Mfg. Co.*, 21 *Ga. App.* 315 (94 S. E. 987); Parks Ann. Code, § 3474 [Code of 1933, § 105-204, supra]." The rule given the jury in charge in the present case was not error.

4. Special ground 9 assigns error on an excerpt from the charge as follows: "I charge you, Gentlemen, that whether a person was injured, the extent of his injury and consequent suffering is entirely a question for the jury; and where he testifies that he was injured and suffered, the jury can accept and credit his testimony based on his knowledge in preference to the evidence of a whole college of physicians that he was not injured. Take that, Gentlemen, in connection with the general charge that you are the judges of the evidence, where the preponderance of the evidence lies."

The defendant does not contend that the charge here complained of was not a correct principle of law but asserts that he made no contention that the plaintiff was not injured, and that the excerpt unduly emphasized the plaintiff's testimony as to his injuries. The defendant introduced testimony of Dr. George

Pilcher, who testified from medical records in the case that the plaintiff's health was not impaired when the medical record was completed, and that there was nothing in his opinion that would cause a person to lose weight "or to suffer pain for an extended period of months or not to be able to engage in athletic or other physical activities." There was a definite conflict in this testimony and the testimony of the plaintiff that he was still suffering from the injuries at the time of the trial and the charge complained of was not error.

5. Special ground 10 complains of an excerpt of the charge dealing with damages because of a loss of ability to earn money in the future because, among other things, "there was no evidence that there had been any future lost earnings or lost earning capacity in the future."

The plaintiff testified as to his pain and suffering from the time of the injury up until the time of the trial, and as to what he could and could not do at that time, and to the fact that he was under medical care for such injuries at the time of the trial, but he did not testify as to what he would or would not be able to do in the future, or as to what pain and suffering he would undergo in the future. (Had he testified as to future pain and suffering such testimony would have been subject to objection. *Ray* v. *Wood*, 93 *Ga. App.* 763, 92 S. E. 2d 820). While Dr. Davidson testified that the scars, as a result of the injuries to the plaintiff's legs, would touch in ordinary activity, he did not testify that such touching of the scars would cause any discomcomfort to the plaintiff, and while as an element of pain and suffering the jury may have been authorized to take the disfigurement caused by the scars into consideration (*Langran* v. *Hodges,* 60 *Ga. App.* 567, 569, 4 S. E. 2d 489), the charge complained of was not based on such premise. Accordingly, this charge was error requiring the grant of a new trial since it authorized an item of damages not supported by the evidence. The case of *Jones* v. *Hutchins,* 101 *Ga. App.* 141 (113 S. E. 2d 475), involved a case where there was evidence of a diminution in the earning capacity of the plaintiff; i.e., earnings before injury, amount and nature of work, the percentage of disability resulting from the injury, and the manner in which her earning capacity had

been decreased. Here the only evidence was evidence as to the plaintiff's injuries and the jury was properly instructed with reference to impairment of capacity to work and labor, (an element of pain and suffering). The *Jones* case, supra, dealt with a situation where there was evidence of a diminution of earning capacity and was not a case, as there distinguished, and, as is the present case, where there was not such evidence but only evidence as to an impaired capacity to work and labor.

6. Inasmuch as the case must be tried again the unusual general grounds of the motion for new trial will not be passed upon except to state that the verdict rendered was not demanded by the evidence, nor will the alleged error complained of in special ground 5 be considered inasmuch as on another trial the incident complained of will probably not reoccur.

*Judgment reversed. Felton, C. J., Gardner, P. J., Townsend, Carlisle and Frankum, JJ., concur. Bell, J., disents.*

BELL, Judge, dissenting. After concurring with the majority in their opinion as to the first nine grounds of the motion for a new trial, I am constrained to disagree with the conclusion reached in Ground Ten (10). This ground asserts that the court erred in charging the jury as follows:

"But if the plaintiff should think he is entitled to recover on account of injury to his person it would be the duty of the jury to determine the amount of his damages. In that connection the court instructs the jury that one item of damage, where there is liability, is the reasonable value of lost earnings, due to such injury that will extend into the future. But that injury should you compensate the defendant for future injury the damages for lost earning capacity or injury because he is incapacitated because of the injury, you have to reduce it to its present value . . ." The movant's objection to this instruction is as follows: "Movant avers that this charge was erroneous because there was no evidence that there had been any future lost earnings or lost earning capacity in the future and no evidence by which the jury could compute with reasonable certainty the pecuniary value of future lost earning capacity in the future, if any, this charge being injurious to movant because it authorized the jury to award damages for which there was no evidence of the existence

of such damages and no evidence as to how to compute such damages if they did exist."

The basis, then, for claiming the instruction to be erroneous is that there was no evidence upon which to find any future loss of earnings or lost earning capacity in the future, and no evidence by which the jury could compute with reasonable certainty the pecuniary value of these elements of damage, if any be found. The contention is further that this instruction authorized the jury to award damages for which there was no evidence of the existence of such damage or as a basis for computing such damages if they did exist.

As to whether or not there was any, or sufficient, evidence upon which to find existence of injuries of a permanent nature which would affect future earning capacity, the record shows that such has been presented. The record discloses the following testimony: "I was twelve years old then and I am fourteen years old now. . . As to your question am I able to perform the same duties or play in the same manner that I could or did before the accident, well, I used to like to play football but you have to bend over to play football and it puts a strain on this part of the leg and it hurts. I am being treated now as a result of the injury." Further, in the record, the reporter's note shows that the injured boy was allowed to go to the jury room with the jury and counsel so that the jury could view the injuries to the witness' legs. Also, on the same page, the injured boy's testimony states: "I said I was playing football before that time but I haven't since because when I bend over it puts a strain on those cuts and it hurts. Before the accident I was engaged in football, baseball, camping trips and activities like that. Since the accident I can perform activities like that but it is painful when I do. I am not performing any of those activities now because it is painful. Before the accident I did exercises such as running and jumping and all sorts of stuff but I have not been able to do any of that since the accident or any degree of that because it is painful. I don't like to do it but sometimes I have to. I don't like to do it because it hurts." Further, the injured boy is quoted as testifying: "As a result of the accident my legs hurt and down there and I was sore all

over and especially up and down here. This pain lasted four or five or six months. The pain that lasted that period of time was the pain in my stomach. As a result of the accident my legs hurt, they ache a lot when I am tired and when I bend over, they pain me and my legs just hurt now and then."

The record further shows that Dr. [R.], who cared for the injured boy, testified as follows: "[H]e had rather long and deep lacerations of both upper thighs . . . They extended through the skin and fat and through a part of the muscle. There, I am speaking of the deep hamstring group of muscles in the posterior aspect of the thigh. You might say the function of those muscles help flex and extend the leg to some extent, but let me refresh my memory here just a minute. This is a muscle. The laceration extended just through a few fibers of this muscle itself. The muscle itself is a very thick muscle." Dr. [R.] further testified: "The only note I have as regards his face or head was this small puncture wound in his right temple", "We were interested in whether or not any nerve damage had been done", "There developed complications in the wounds, more particularly on the right leg; there was a slight separation on the lateral side, the outside part of the wound on the right thigh."

The testimony cited above is fragmentary in the doctor's total testimony, and the doctor's general conclusions were, as he stated to the jury, that it was his opinion that there was no permanent injury done the boy. However, the jury would not be compelled to accept his opinion against their own observations and their own views of the testimony of the boy.

The record discloses that the testimony of the mother of the injured boy included the following statement: "After the boy came home he was in bed for ten days and he couldn't wait on himself at all. He couldn't bathe himself, he didn't have bathroom privileges, he couldn't walk and, of course, it required my waiting on him because I had no help at home at all. I had to wait on him for everything. Then at the end of that time we put him in a wheel chair and kept him there about ten days, somewhere between ten and twelve days, with him standing on his feet just at intervals to begin straight out walking and then we let him walk in the house just at odd times until he began

to get his strength back. After he began to walk, really walk, I noticed that he would have to walk with his legs out like that and drag his feet. That cut in his leg, I didn't know whether the boy was going to have a life dragging of feet or not and it really worried me. That kept on for six months and I would say, 'Son, can't you pick your feet up', I wanted to do everything I could to push him along." "He was not able to engage in the same activities after the injury as he engaged in before the accident."

Dr. (D) testified that as a result of his examination of the boy he found: "He has three rather noticeable scars, one over each upper posterior thigh, and one over the distal third of the left · tibia. The scars that I found on his thighs were well healed, although fairly broad, probably implying a rather deep wound, which had been closed."

In addition the record shows numerous pictures of the scars contained on the boy's body which were admitted in evidence and exhibited to the jury.

Admittedly the evidence referred to here is interspersed through the voluminous testimony and exhibits. While it is freely acknowledged that there was evidence both expert and general that the boy did not suffer any permanent injury, nevertheless there is in the record sufficient evidence upon which the jury could base a conclusion that the boy was in some degree permanently injured and affected by these injuries.

The second contention of the movant is that there was no evidence of future loss of earning capacity by which the jury could compute with reasonable certainty their pecuniary value. But it must be borne in mind that in this case the injury was to a 12-year-old boy, and the trial of the case was held in his fourteenth year. Where there is injury to an infant not regularly employed, and not of the age expected to be regularly employed, the determination of any loss of future earnings must in its nature be left substantially to the sound discretion of the jury. There is no possibility of detailed itemization and computation of loss of future earnings for an infant before he embarks upon the earning phase of his life. We must keep in mind that the law as it enters into the realm of infant's rights

is not the cold, arm's length law of the market place or the law of the adult world of conflict. The Georgia courts have from early times recognized and implemented this attitude. Mr. Justice Hill in *Betts Co.* v. *Hancock*, 139 *Ga.* 198, 207 (77 S. E. 77) states: "The evidence shows that the plaintiff was a minor under the age of 14 years. In such a case, the rule is different from where the injured one is an adult. Where an adult sues for personal injuries, there must be proof of the earning capacity of the plaintiff, in order to support such a charge as that complained of here . . . But where minors sue for personal injuries, the rule seems to be otherwise." The Georgia Supreme Court in the *Hancock* case further quoted with approval the following language from Buckry-Ellis *v*. Mo. Pac. Ry. Co., 158 Mo. App. 499 (138 S. W. 912-914): "As to infants of tender years, it is impossible to give evidence of the pecuniary value of such probable loss; and therefore the rule is that the question of damages for loss on account of impairment of future earning capacity is left to the sound judgment, experience, and conscience of the jury, without any proof thereof whatever . . . Mr. Watson, in his work on Damages, § 514, says substantially, in speaking of an infant whose earning capacity was untried, that to require evidence of specific pecuniary loss in any amount in such cases would be to deny a recovery on this ground altogether. The result therefore is that a distinction is expressly recognized between such cases and cases where the plaintiffs are adults. The fact of the inability to prove the prior and probable earning capacity is not to be invoked against the infant; for, as between the wrong-doer and the innocent victim of the tort, the former, and not the latter, should suffer the consequences of any uncertainty in the extent of the loss." And in Ferrier *v*. Schoenberg Mercantile Co., 158 Mo. App. 533 (138 S. W. 893-894), it is said: " 'When a recovery is sought for loss of time or past earnings, it is possible for the pleader to make a fair estimate and claim in respect of the matter, for he is then possessed of all the facts pertaining to it. It is past, and one knows the loss from experience. Such is not true, however, in any case where the claim is for the loss of earnings or diminished earning capacity in the future, for no one can foresee

with certainty what such loss may be; and especially is this true in the case of an infant. Indeed, the courts recognize this feature of the matter to such an extent as to affirm that in cases where the plaintiff is an infant with no fixed avocation or trade, and therefore wholly unable to even conjecture what his probable future calling and loss of earnings therein may be, a recovery may be allowed on that score without any proof whatever suggesting the amount'; citing numerous authorities."

The contention of the movant here is that there is no evidence for the determination of monetary loss of this minor; however, proof alone of impairment permanently of the minor's agility and muscular coordination and control would be proof of some loss of earning capacity in the future. There is also evidence in the record from which a jury could have based an opinion as to loss of earnings, if any, and such basis would be sufficient to support, as proper, the action of the jury in taking this element into account in awarding damages. The record shows that the father of the injured boy held a Bachelor of Science degree in technical engineering from Georgia Tech, and it shows him to be in the contracting business, running a business called the Southern Waterproofing Company, which employs some 3 to 40 persons. The father and mother of the injured boy were before the jury and from this the jury had some evidence of the station in life of the family which is relevant evidence in determining loss of future earning capacity of their infant child. This is proper evidence upon which to base a child's prospective future earnings after his majority. See the observations of the courts on this subject in Gill v. Laguerre, 51 R. I. 158 (152 A. 795, 796) and Morel v. Lee, 182 Ark. 985 (33 S. W. 2d 1110). Note also the inference in support of this thought which appears in Division 2 of the majority opinion as shown by the quote from the cited case of Brown v. Mathews, 79 Ga. 1 (4 S. E. 13). The length of life expectancy of the child was also properly shown in evidence.

The evidence in the record shows the following: "After he got out of the hospital about all he could do was pick a guitar. He has not ridden a bicycle since the accident, he tried but it hurt his legs . . . Before the accident he was a great deal

of help doing chores around the business and around the home. He has seldom been able to perform those duties since the accident. Before the accident he has been a lot of help around the farm, he has been running a tractor three or four years, loaded and unloaded trucks. The activities he had been performing before the accident, those activities ceased after the accident, he dropped them and he quit. He has not been able to perform any of them up to this point but now and then he will sit in the office for me but no physical work, heavy physical work." Also, "He was not able to engage in the same activities after the injury as he engaged in before the accident."

The record does have some evidence, sufficient evidence, to lay the groundwork for determining the loss of future earning capacity of this minor, and it was justifiably submitted to the jury for their consideration. Although the evidence as to the specific monetary loss that might be entailed in the future is not as specific as it would be for an adult, it is sufficient for an award by the jury of an infant of the boy's age here concerned.

Within its instructions, the jury could have found from the evidence that there was no permanent injury to the infant and no loss of future earning capacity, but they also, justifiably, could have found some slight permanent injury, and thus some slight loss of earning capacity in the future. The jury's verdict awarding to the boy the amount of $2,500 for all damages sustained indicates that there was no obvious misapplication in evaluating this element of damage, and there is insufficient basis for the movant's objection to the charge as raised by Ground Ten (10) of the defendant's motion for a new trial. The trial court's order overruling the motion for a new trial should not be reversed on the assignment of error stated in Ground Ten (10).

As I construe the holding in *Jones* v. *Hutchins*, 101 *Ga. App.* 141 (113 S. E. 2d 475), it tends to support the conclusions asserted in this dissent.