38168. STUDSTILL *v.* AETNA CASUALTY & SURETY COMPANY.

DECIDED JUNE 6, 1960.

*Hollis Fort, Jr.,* for plaintiff in error.

*H. B. Williams, W. P. Burt, Burt & Burt,* contra.

NICHOLS, Judge. ■ The plaintiff in error contends that the trial court erred in granting the motion for summary judgment since the original petition was filed on February 20, 1959, which was some 25 days prior to the approval of the Summary Judgment Act on March 17, 1959, and the Summary Judgment Act could not be applicable in the case at bar, but rather the case can only proceed under the laws of procedure as they existed as of February 20, 1959. "The rule with reference to retrospective statutes has been repeatedly held by this court to be limited to substantive rights and not to the remedy. In *Knight* v. *Lasseter,* 16 *Ga.* 153, it was held: 'For the purpose of operating on the remedy only, the legislature may, undoubtedly, pass retrospective acts; and for such purposes, they are not unconstitutional.' In *Searcy* v. *Stubbs,* 12 *Ga.* 439, it was held: 'Remedial statutes are not inoperative, although of a retrospective nature, provided they do not impair contracts, and only go to confirm rights already existing, and in furtherance of the remedy, by curing defects and adding to the means of enforcing existing obligations.' " *Walker Elec. Co.* v. *Walton,* 203 *Ga.* 246 (46 S. E. 2d

184). The Summary Judgment Act being remedial in nature is not, although retrospective, inoperative, and clearly falls within the purview of the above quoted authority. This contention of the plaintiff in error is therefore without merit.

■ The plaintiff in error in his brief argues that there are genuine issues of fact between the parties that should be submitted to a jury. He contends that under the record in the case, and particularly in defendant's (plaintiff in error here) own deposition he states "that part of his payments were to go for insurance premiums," and he asserts further in his brief that he "could prove same, while the deposition of Mr. Apfel (witness for plaintiff in the trial court) states definitely that the defendant did not pay any part of this premium." Section 3 of the Summary Judgment Act provides: "The motion shall be served at least thirty days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law, but nothing in this act shall be construed as denying to any party the right to trial by jury where there are substantial issues of fact to be determined. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Obviously this contention of the plaintiff in error is without merit for the reason that if the plaintiff in error, at the time of the hearing on the motion for summary judgment had any valid defenses, it was his duty under the Summary Judgment Act to present same at that time, for the very purpose of the Summary Judgment Act is to afford either party litigant to a judgment *forthwith* if the record shows there is not a genuine issue existing between the parties, but only after each party has had opportunity to make out his case, or establish his defense, as the case may be. The summary judgment granted in this case places the plaintiff in error in no different position from where a verdict by a jury, or a directed verdict by the trial court would have placed him.

The insurance contract in this case, as hereinafter described and out of which this action arose, was solely between the Cincinnati Butcher's Supply Company, and the plaintiff, defendant in error here, Aetna Casualty & Surety Company. The plaintiff in error admittedly had nothing to do with the procurement of the insurance policy involved in this case, but does contend that his monthly payments on the equipment that he had purchased from the Cincinnati Butcher's Supply Company included insurance premiums on same. The record, however, does not support this contention—the record and schedule of the payments made on this equipment by the plaintiff in error, which were introduced in evidence by the defendant in error show that the payments were credited only on the balance due on the equipment and no deduction made or credits given for insurance premiums. The mere statement of the plaintiff in error to the contrary could not vary the terms of the written sales contract between the Cincinnati Butcher's Supply Company and the plaintiff in error which provides: "The foregoing is the agreement as it exists at this date, and it is agreed and distinctly understood that all previous communications between the parties hereto, either verbal or written, are hereby withdrawn and annulled and that there are no representations and no warranties expressed or implied except as herein specifically provided, and that no modification of this agreement shall be binding upon either party unless such modifications shall be in writing, duly accepted by the purchaser and the seller on all signed copies thereof." The last and final paragraph in the conditional-sale contract above referred to also provides: "The seller shall have the right to assign seller's rights, title and interests under this contract, and if this contract is assigned purchaser shall make all payments to the assignee holding purchaser's promissory note hereinabove described." Moreover, the insurance policy between the Cincinnati Butcher's Supply Company and Aetna Casualty & Surety Company provides: "In the event of any payment under this policy the company shall be subrogated to all the assured's rights of recovery therefor against any person or organization, and

the assured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights."

Under the record here the defendant in error, Aetna Casualty & Surety Company, paid its assured, Cincinnati Butcher's Supply Company, as it was required under the insurance policy contract to do, the balance due on the promissory note given for the equipment purchased by the plaintiff in error from the assured; the assured then assigned the promissory note of the plaintiff in error, as it had a right to do under the conditional-sale contract between the assured Cincinnati Butcher's Supply Company and the plaintiff in error to the defendant in error Aetna Casualty & Surety Company; the defendant in error then brought suit to recover on the promissory note which it had a right to do, either as assignee or subrogee of the Cincinnati Butcher's Supply Company, under the provisions of the conditional-sale contract or the insurance policy. The plaintiff in error admitted in his answer the execution of the note and admitted that the balance due on the note on October 31, 1959, (the date the equipment was destroyed by fire) was the amount sued for. The plaintiff in error filed no valid defensive pleadings in the lower court and therefore the trial court did not err in granting the motion for summary judgment, as under the pleadings, depositions and affidavits that comprise the record in this case, there is no conflict as to any material issue of fact.

*Judgment affirmed. Bell, J., concurs. Felton, C. J., concurs specially.*

FELTON, Chief Judge, concurring specially. The following provision of the conditional-sale contract involved is completely controlling on the issue in this case: "The purchaser agrees to keep the interest of the seller in all of said material insured against loss or damage from any or all causes and to pay the premium of said insurance and to deliver the policies or a policy rider to the seller. Any neglect or failure on the part of the purchaser to have said material so insured and to deliver the policies or rider to the seller shall give the seller the right, at its option, to declare the entire indebtedness due, and at its option to have such material insured in its name, and as its interest

may appear, and to pay the premiums on the policies thereof, and charge same to the purchaser's account, which he agrees to pay. Seller, however, shall be under no obligation to procure or maintain insurance."