## 45631. COTTON STATES MUTUAL INSURANCE COMPANY v. PROUDFOOT.

EVANS, Judge. Stewart Proudfoot, as plaintiff, sued Ethel L. Salanga, as defendant, in the Superior Court of Glynn County, because of personal injuries alleged to have been incurred as the result of an automobile collision. The defendant was insured by Cotton States Mutual Insurance Company, and said insurer conducted the defense through attorneys that it employed for that purpose. Verdict and judgment were rendered for the plaintiff, after which plaintiff had garnishment served on Cotton States Mutual Insurance Company as to the policy of insurance issued by it to the defendant. Subsequently the insurer filed a motion for summary judgment, alleging that the insured had failed to co-operate with it by failing to attend the trial of the main case. There were only two affidavits submitted in evidence on the motion for summary judgment, one being the affidavit of the attorney for the insurer and the other being the affidavit by the attorney for the plaintiff.

1. It is undisputed that the insured did not appear at the trial of the suit brought against her by the plaintiff. The affidavit of the insurer's attorney recites that she was in California; that he talked with her on the telephone and sent her the money for transportation; and that she promised to appear. But this was not admissible evidence to show that he actually talked with the defendant as he did not claim to have recognized her voice or to have ever known her. *Stewart v. Fisher,* 18 Ga. App. 519 (3) (89 SE 1052); *Myers v. Brown,* 74 Ga. App. 534 (40 SE2d 391). Nor was he competent to testify to what happened in California as to her receipt of funds for transportation.

2. Affidavits in support of motion for summary judgment must be made on personal knowledge as to admissible evidence and must show that the affiant is competent to testify to the matter therein set forth. § 56 CPA (Ga. L. 1966, pp. 609, 660; 1967, pp. 226, 238; *Code Ann.* § 81A-156 (e)); *Holland v. Sanfax Corp.,* 106 Ga. App. 1, 5 (126 SE2d 442).

3. No showing was made by the insurer as to the reason for the insured's failure to attend. The burden was on the movant for

summary judgment to make this showing and to convince the trial court that her failure to appear and co-operate was a wilful and intentional refusal to co-operate. *National Union Fire Ins. Co. v. Carmical,* 99 Ga. App. 98, 104 (107 SE2d 700); *State Farm Mut. Auto Ins. Co. v. Wendler,* 117 Ga. App. 227, 231 (160 SE2d 256).

4. It was shown that the case had been continued prior to the time on which the final trial was held, but when counsel for the insurer learned that the insured was not present, the record does not show that he moved for further continuance in order to serve a "reservation of rights" notice upon the defendant, but contented himself with advising the trial court that he was reserving his rights to contend the insurance was not effective because of her failure to co-operate. The trial court, however, was not the agent of the insured person, and when an insurance company elects to participate in a trial by defending the action without giving such "reservation of rights" notice, then it is estopped to later contend the insurance is not effective. See *Jones v. Ga. Cas. &c. Co.,* 89 Ga. App. 181, 185 (78 SE2d 861); *State Farm Mut. &c. Ins. Co. v. Anderson,* 104 Ga. App. 815, 818 (123 SE2d 191); s.c., 107 Ga. App. 348 (2) (130 SE2d 144).

5. In motions for summary judgment "the party opposing the motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists and the trial court must give that party the benefit of all favorable inferences that may be drawn from the evidence." *Holland v. Sanfax Corp.,* 106 Ga. App. 1, 5, supra.

6. Ordinarily, in the trial of a civil action the attorney who moves for a continuance because of the absence of his client has the burden of showing that he cannot go safely to trial without the presence of the party. *Cauthen v. Barnesville Savings Bank,* 69 Ga. 767 (1); *Mosley v. Bridges,* 65 Ga. App. 64 (15 SE2d 260). Here, however, the insurance company had a contract with the insured by which she agreed to be present. But no motion for further continuance was made, and no showing has been made as to why the party was absent. Illness or other good excuse might have prevented her appearance. Be that as it may, the

burden to show she "wilfully and intentionally refused to appear" was upon the movant.

The judge of the lower court correctly overruled the motion for summary judgment in this case.

*Judgment affirmed. Bell, C. J., Jordan, P. J., Pannell and Quillian, JJ., concur. Hall, P. J., Eberhardt, Deen and Whitman, JJ., dissent.*

ARGUED SEPTEMBER 17, 1970—DECIDED JANUARY 29, 1971—
REHEARING DENIED MARCH 2, 1971.

*Fendig, Dickey, Fendig & Whelchel, J. Thomas Whelchel,* for appellant.

*Nightingale, Liles & Dennard, B. N. Nightingale, Thomas E. Dennard, Jr.,* for appellee.

HALL, Presiding Judge, dissenting. In my opinion, this court's recent opinion in *H. Y. Akers & Sons v. St. Louis Fire Ins. Co.,* 120 Ga. App. 800, 803 (172 SE2d 355) is controlling here: "The co-operation clause [in a liability insurance policy] is a material condition of a liability policy and a breach of it in any material respect relieves the insurer of liability. The voluntary and unexcused failure of an insured to attend a trial, after notice or request to do so, upon a claim covered by his policy of insurance is such a breach of the clause. It has been held that his failure to attend the trial, after notice or request to attend, and aid in the defense is, *per se, prejudicial,* and one who would seek to enforce the contract for his benefit must show that he has performed all conditions on his part required to be performed as a condition precedent to his right. . . The judgment creditor, who sues on a policy indemnifying the insured against claims for damages, stands in the shoes of the insured and is chargeable, like the insured, with any breach of conditions on which liability depended. . . The rights of a third party can rise no higher than and are dependent upon the rights of the insured. . . To show a prima facie breach the insurer is required to do *no more* than show that it exercised good faith and diligence in an effort to procure the attendance of the insured at the trial and that he did not attend. . . It is not required to anticipate and negate all of the ex-

cuses and reasons that might justify his nonattendance." (Emphasis supplied). See also 8 Appleman, Insurance 148, § 4784: "Absence or nonavailability of the insured is prima facie a breach of the policy, and refusal to attend the trial has been held to constitute a breach of the co-operation clause. It has been stated also that the insurer is *not required* to request or consent to a continuance. The insured's excuse for not appearing must be one which would receive favorable consideration on a motion for a new trial, and it must be made known to the insurer's representatives before the opportunity to reopen the case has expired." (Emphasis supplied).

The undisputed evidence in support of defendant's motion for summary judgment shows that the insured removed herself from Glynn County, Ga. and resided in Oakland, Calif., at the time of the trial; that the insurer made several attempts to get the insured to attend the trial; that arrangements were made for her stay in Brunswick while she was engaged in the trial; that funds were sent by the insurer to the insured to cover the costs of round trip air fare from Oakland to Brunswick for the insured and her husband ($667 plus $20 as ground travel expenses); that these drafts were negotiated and presented for payment on a date subsequent to the trial; that she failed to appear for reasons unknown to the insurer; that the insurer proceeded to trial, but only after announcing in open court it was doing so without waiving any rights to deny coverage; and that the plaintiff had been informed on several previous occasions by the insurer that it intended to deny coverage on the ground that its insured had failed to co-operate with the insurer in getting her to appear at the trial.

In my opinion, the above testimony of the defendant clearly pierced the allegations of plaintiff's petition and made out a prima facie defense under the *Akers* case, supra.[1] The burden then rested upon the plaintiff to produce counterproof or suffer summary judg-

---

[1] On the motion for summary judgment, only a portion of the insurance policy was placed in evidence. If the terms of the policy provide that the co-operation clause is a condition precedent to recovery under the policy, the burden of proving co-operation would rest upon the plaintiff. *Wolverine Ins. Co. v. Sorrough,* 122 Ga. App. 556 (177 SE2d 819).

ment. *Crutcher v. Crawford Land Co.,* 220 Ga. 298, 304 (138 SE2d 580); *Scales v. Peevy,* 103 Ga. App. 42 (118 SE2d 193); *Studstill v. Aetna Cas. &c. Co.,* 101 Ga. App. 766, 768 (115 SE2d 374). Once the insurer proved failure of attendance on the part of the insured and good faith on its part to procure attendance, the plaintiff (whose rights are solely dependent upon the rights of the insured) must show a good reason why the insured did not attend. This he did not do. Furthermore, the defendant insured was under a duty to be at the trial aside from her co-operation agreement. As this court has said, a defendant is "charged with the legal duty of keeping advised as to the progress of the litigation, notwithstanding the fact that he was represented by counsel. *Lovelace v. Lovelace,* 179 Ga. 822.(177 SE 685); *Beavers v. Cassells,* 56 Ga. App. 146, 153 (192 SE 249) and cit." *Langran v. Hodges,* 60 Ga. App. 567, 574 (4 SE2d 489).

The purpose of requiring notice of a reservation of rights is to allow the insured time to enlist the aid of independent counsel if she so desires. By her unexplained failure to appear, the insured is estopped to claim she was denied an opportunity to retain independent counsel. She demonstrated a total disinterest in the outcome of the case. One can hardly suppose that had the case been continued long enough for the insurer to send her a reservation of rights notice, she would have gone to the trouble and expense of hiring independent counsel when she wouldn't even co-operate with that provided by her own insurer.

The plaintiff is therefore derivitively estopped to assert this claim. Further, by the insurer's declaration in court, in addition to the previous correspondence on this point, the plaintiff was on notice that if he proceeded with the trial, the insurer would rely upon the defense of non-cooperation in any subsequent action plaintiff might bring against it. The doctrine of estoppel is applicable against the plaintiff not the insurer. See *State Farm Mut. &c. Ins. Co. v. Anderson,* 107 Ga. App. 348, 352 (130 SE2d 144).

We must not forget that the tort was committed by the insured, not the insurer, that the purpose of the liability insurance policy is for the benefit of the insured, not the plaintiff, and that the sine qua non for the insured's protection under the policy was her obligation in the policy to co-operate with her insurer.

The "fault" system is the beat to which our automobile litigation is supposed to march. This case presents an interesting paradox. Since this suit is brought against the liability insurer, the relevance of liability insurance in automobile litigation is graphically illustrated. Liability insurance is determined under the terms of the contract between the insured and the insurer. The terms determine the cost of the insurance which has risen dramatically over the past several years. The general public, through insurance premiums, finances the results of automobile litigation and is greatly troubled over these increased costs. Those who view themselves as safe drivers and who fulfill their contractual obligations think that their rates should be lower than those who do not fit these categories. The insurers have attempted to meet this demand by adjusting their rates vis-a-vis these distinctions. The co-operation clause and its fulfillment has an obvious relationship to this rate structure. If the courts are unwilling to enforce the provision, it is axiomatic that no actuarial benefit can be given to those drivers willing to adhere to the terms of the contract. As a result, the alleged "wrongdoer" is not punished for his "fault" in any way at all. The judgment is paid by his insurer, who must set premiums to cover situations where there is no co-operation. The result is that the loss must be distributed over the entire community by increased premiums. Where everyone dances, the piper must be paid accordingly.

I am authorized to state that Judges Eberhardt, Deen and Whitman concur in this dissent.