# WHOLE COURT

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **http://www.gaappeals.us/rules/**

**July 15, 2014**

# In the Court of Appeals of Georgia

A14A0168. CASTELLANOS v. TRAVELERS HOME & MARINE    JE-103
    INSURANCE COMPANY.

ELLINGTON, Presiding Judge.

Luis Castellanos filed this action in the State Court of Gwinnett County against Travelers Home & Marine Insurance Company to recover uninsured motorist (UM) insurance benefits, statutory penalties for Travelers' alleged bad faith in refusing to pay benefits, and attorney fees. The trial court granted Travelers' motion for summary judgment and denied Castellanos' motion, and he appeals both rulings. For the reasons explained below, we reverse in part, as to the court's grant of summary judgment in favor of Travelers.

Under OCGA § 9-11-56 (c)

[s]ummary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review the grant or denial of a motion for summary judgment de novo, and we view the evidence, and the reasonable inferences drawn therefrom, in a light most favorable to the nonmovant.

(Punctuation and footnotes omitted.) *Assaf v. Cincinnati Ins. Co.*, _ Ga. App. _ (Case No. A14A0145, decided June 5, 2014).

So viewed, the record shows the following undisputed evidence. On September 22, 2009, Castellanos was injured in a wreck caused by the negligence of another driver, Jose Santiago. At the time of the wreck, Castellanos was a named insured under a UM policy Travelers issued to Lucrecia Arias, and he was driving a covered automobile.

Castellanos filed suit against Santiago for his injuries. Santiago's liability insurance carrier, United Automobile Insurance Company, provided a defense. Castellanos also served the summons and complaint on Travelers as his UM carrier, and Travelers' counsel participated in the suit through the end of the trial. After a trial which Santiago did not attend, a jury returned a verdict in favor of Castellanos, and, on February 1, 2012, the trial court entered judgment against Santiago for $3,731 in compensatory damages, $3,269 in punitive damages, and $135.50 in court costs.

2

Castellanos demanded payment of the judgment from United as Santiago's liability carrier. After some communication between counsel, United formally denied any coverage, based on Santiago's "lack of cooperation in the defense of [Castellanos'] lawsuit and [his] failure to attend the resulting trial." Castellanos then demanded that Travelers pay the compensatory damages under Arias' UM policy. Travelers failed to pay UM benefits within 60 days of Castellanos' demand.

Castellanos filed the instant action against Travelers, alleging, inter alia, that Travelers' refusal to pay UM benefits was made in bad faith.[1] Castellanos filed a motion for summary judgment, and Travelers filed a cross-motion. Travelers argued that there was no evidence that United's denial of coverage on the basis that Santiago failed to cooperate in the defense was a legal denial of coverage and, therefore, that Santiago was not an uninsured motorist as defined in Arias' UM policy. After a hearing, the trial court granted Travelers' motion for summary judgment and denied

---

[1] OCGA § 33-7-11 (j) provides, in pertinent part,
If the [UM] insurer shall refuse to pay any insured any loss covered by this Code section within 60 days after a demand has been made by the insured and a finding has been made that such refusal was made in bad faith, the insurer shall be liable to the insured in addition to any recovery under this Code section for not more than 25 percent of the recovery and all reasonable attorney's fees for the prosecution of the case under this Code section.

Castellanos' motion, finding that there was "no evidence that United reasonably requested Santiago's cooperation, that Santiago willfully and intentionally failed to cooperate, that his failure to cooperate was prejudicial to United, and that [his] justification for failing to respond was insufficient." Based on this determination, the trial court concluded that Castellanos "failed to present evidence that there was a 'legal denial' of coverage by United."

1. Castellanos contends that the trial court's ruling improperly shifted to him the burden of coming forward with evidence that supported United's denial of coverage and that the trial court erred in granting Travelers' motion for summary judgment. We agree.[2]

One essential element of Castellanos' action against Travelers was that Santiago was the owner or operator of an uninsured motor vehicle, as defined by Arias' UM policy and Georgia law. OCGA § 33-7-11 (j).[3] Under the applicable

---

[2] The precise issue presented by the record, the trial court's ruling, and Castellanos' arguments on appeal appears to be a matter of first impression. We do not find it necessary to overrule any controlling precedent. Accordingly, we reject the dissenters' contention, see dissent at *11, that this opinion necessitates appellate review by all 12 judges of this Court.

[3] Footnote 1, supra. See, generally, Frank E. Jenkins III, Ga. Auto. Ins. Law, §§ 37:4 (demand for payment and bad faith), 37:5 (separate action for bad faith), 37:22 (proving uninsured status of offending motorist) (2013-2014 ed., updated

4

contractual[4] and statutory[5] definitions of an uninsured motor vehicle, an insured

motor vehicle, such as the one Santiago was driving, could effectively become

uninsured, retroactively to the date of an accident, when a driver's liability carrier

denies coverage, provided that such denial is, under applicable law, legally

sustainable.[6] When, on the other hand, a driver's liability carrier denies coverage and

October 2013).

[4] Under the terms of Arias' UM policy, Travelers agreed to "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of" an insured's bodily injury or property damage caused by an accident. In pertinent part, the policy defines an "uninsured motor vehicle" as a motor vehicle "[t]o which a liability bond or policy applies at the time of the accident but the bonding or insurance company . . . [l]egally denies coverage[.]"

[5] The UM statute provides in pertinent part that
"[u]ninsured motor vehicle" means a motor vehicle . . . as to which there is . . . [b]odily injury liability insurance and property damage liability insurance in existence but the insurance company writing the insurance has legally denied coverage under its policy[.]
OCGA § 33-7-11 (b) (1) D) (iii).

[6] *Southern General Ins. Co. v. Thomas*, 197 Ga. App. 196, 197 (397 SE2d 624) (1990) ("Should the [tortfeasor's] liability carrier later deny coverage, a cause of action against the [innocent driver's] uninsured motorist carrier may then arise, because only at that time would there be an 'uninsured' motor vehicle as defined in OCGA § 33-7-11 (b) (1) (D) (iii).") (citation, punctuation, and emphasis omitted); *Hemphill v. Home Ins. Co.*, 121 Ga. App. 323, 335 (5) (174 SE2d 251) (1970) (Liability coverage can be said to have been legally denied only if the denial is, under applicable law, legally sustainable.); Frank E. Jenkins III, Ga. Auto. Ins. Law, § 32:4

such denial is *not* legally sustainable, the injured driver's UM coverage generally will not apply, because the tortfeasor is not, technically, uninsured.[7]

In this case, it is undisputed that Santiago's liability policy required him to cooperate with United's defense against Castellanos' tort action and authorized United to withdraw coverage if Santiago failed to cooperate in the defense. Such cooperation clauses are enforceable under Georgia law.[8] Thus, "[u]nder applicable law, the tortfeasor's failure to cooperate can, under certain circumstances, form the legally sustainable basis for his liability carrier's denial of coverage." (Citation and

(legally denied liability coverage) (2013-2014 ed., updated October 2013).

[7] *Hemphill v. Home Ins. Co.*, 121 Ga. App. at 335-336 (5).

[8] *Vaughan v. ACCC Ins. Co.*, 314 Ga. App. 741, 742 (2) (725 SE2d 855) (2012) ("Once a plaintiff establishes his right to payment of a judgment against the insured tortfeasor, the insurer may defend against the claim by showing that it properly withdrew its coverage of the underlying incident because its insured failed to cooperate in [his or] her defense."); *H. Y. Akers & Sons v. St. Louis Fire & Marine Ins. Co.*, 120 Ga. App. 800, 803 (1) (172 SE2d 355) (1969) ("The co-operation clause is a material condition of a liability policy and a breach of it in any material respect relieves the insurer of liability."). See also OCGA § 33-7-15 (a) (Every motor vehicle liability insurance policy shall require "the insured to send his insurer, as soon as practicable after the receipt thereof, a copy of every summons or other process relating to the coverage under the policy and to cooperate otherwise with the insurer in connection with the defense of any action or threatened action covered under the policy."); see, generally, Frank E. Jenkins III, Ga. Auto. Ins. Law, §§ 23:1 (necessity of cooperation of insured), 23:4 (failure of insured to appear at trial) (2013-2014 ed., updated October 2013).

emphasis omitted.) *Southern General Ins. Co. v. Thomas*, 197 Ga. App. 196, 198 (397 SE2d 624) (1990). In addition, it is undisputed that Santiago failed to appear for trial in Castellanos' tort action and that, after judgment, United denied coverage on the basis that Santiago breached that contractual duty to cooperate in the defense, in part by failing to attend the trial.

Travelers contends that it was nonetheless justified in failing to pay UM benefits, and the trial court agreed, finding that Castellanos failed to come forward with evidence that United's denial of coverage was a *legal* denial. In casting upon Castellanos the burden of coming forward with evidence that United reasonably requested Santiago's cooperation, that Santiago willfully and unjustifiably failed to cooperate, and that his failure to cooperate was prejudicial to United, the trial court required Castellanos to discharge a burden that United would have borne as a defendant in a suit under OCGA § 33-4-6[9] for bad faith penalties for denying

9

In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

coverage. See *Vaughan v. ACCC Ins. Co.*, 314 Ga. App. 741, 742-743 (2) (725 SE2d 855) (2012).[10] This was improper. Given the evidence that United denied coverage under Santiago's liability policy based on his alleged failure to cooperate with the

---

OCGA § 33-4-6 (a).

[10]
> Once a plaintiff establishes [the] right to payment of a judgment against the insured tortfeasor, the [tortfeasor's liability carrier] may defend against the [plaintiff's] claim [for bad faith refusal to pay the tort judgment] by showing that it properly withdrew its coverage of the underlying incident because its insured failed to cooperate in [the] defense. [To justify a withdrawal of coverage based on the insured's failure to cooperate,] [t]he insurer must show: (a) that it reasonably requested its insured's cooperation in defending against the plaintiff's claim, (b) that its insured wilfully and intentionally failed to cooperate, and (c) that the insured's failure to cooperate prejudiced the insurer's defense of the claim. Once the [tortfeasor's liability carrier] presents evidence that it was entitled to withdraw coverage, the burden shifts to the plaintiff to establish that the insured [tortfeasor]'s failure to cooperate was justified.

(Citations omitted.) *Vaughan v. ACCC Ins. Co.*, 314 Ga. App. at 742-743 (2). See also *H. Y. Akers & Sons v. St. Louis Fire & Marine Ins. Co.*, 120 Ga. App. at 802 (1) (To justify withdrawal of coverage, "[t]he nonco-operation must, of course, have been material – not merely technical or inconsequential in nature."). Once the insurer presents evidence that it was entitled to withdraw coverage, the burden shifts to the plaintiff to establish that the insured's failure to cooperate was justified in order to support the allegation that the insurer acted in bad faith in withdrawing coverage. *Vaughan v. ACCC Ins. Co.*, 314 Ga. App. at 743 (2). See also OCGA § 9-11-9 (c) ("In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity.").

defense, a legal basis that falls squarely within the terms of the policy and is authorized under Georgia law,[11] this is not a case where the court is asked to *presume* Santiago's status as an uninsured motorist.[12] See *Southern General Ins. Co. v. Thomas*, 197 Ga. App. at 197.[13] Although evidence may exist that United's denial of

---

[11]

> Every person familiar with the trial of cases by jury knows that the case of an individual defendant is seriously, if not hopelessly, prejudiced by his absence from the trial. His failure to be present in defense of the claim can have an intangible effect upon the jury both as to the question of liability and the amount of the verdict, the net effect of which is difficult to measure. Unexpected developments in the plaintiff's evidence might be offset by an explanation on the part of the insured.

(Citations and punctuation omitted.) *H. Y. Akers & Sons v. St. Louis Fire & Marine Ins. Co.*, 120 Ga. App. at 803 (1).

[12] Cf. *Anthony v. Larios*, 256 Ga. App. 248, 249 (568 SE2d 135) (2002) (Where an injured driver sued another driver and alleged that the other driver was uninsured, and the alleged tortfeasor defaulted and thereby judicially admitted that he was uninsured, such admission did not bind the injured driver's UM carrier. Because the injured driver failed to present any evidence at trial that the alleged tortfeasor was uninsured, the UM carrier was entitled to judgment as a matter of law.); *Hartford Accident & Indem. Co. v. Studebaker*, 139 Ga. App. 386, 387 (228 SE2d 322) (1976) (Where an injured driver failed to present any evidence at trial to support his allegation that the alleged tortfeasor was uninsured, the UM carrier was entitled to judgment as a matter of law.).

[13] In response to the dissent at *9-10, we clarify that Castellanos made out a prima facie claim for UM benefits by showing that he is legally entitled to recover from Santiago for injuries he sustained in the accident; that Travelers provided him UM coverage, under Arias' policy, which defined an uninsured motor vehicle as one to which, although a liability policy applied at the time of the accident, the liability

9

benefits (on the basis that Santiago failed to cooperate with the defense) was not legally sustainable (for example, if United never requested his cooperation), once Castellanos met his threshold burden of showing that he was entitled to UM benefits, Travelers had the burden of presenting such evidence to justify its denial of coverage, as it would for any other affirmative defense.[14] See *Anthony v. Larios*, 256 Ga. App.

carrier legally denied coverage; that Santiago's liability policy authorized United to withdraw coverage on the basis of a lack of cooperation and such provision is consistent with Georgia law; and that United in fact denied coverage on that basis. It is *not* our position that proof of Santiago's failure to attend the trial is alone sufficient to show a lack of cooperation. See id.

[14] The dissenters contend that the burden of proving a legally sustainable denial of coverage "is not unduly onerous." Dissent at *6. But the burden of proving the opposite – Travelers' burden – is no more onerous and can be satisfied by the same mechanisms the dissent suggests. *Travelers* could name United as a third-party defendant and seek a declaration as to which policy provides coverage for Castellanos' judgment, "thus placing the burden on United to prove a legal denial of coverage." Id. Alternatively, *Travelers* could depose United's counsel to determine what efforts counsel made to secure Santiago's cooperation. Id. In discerning the parties' relative burdens of coming forward, we must not lose sight of the purpose of UM insurance motorist legislation, which is "to require some provision for first-party insurance coverage to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers." (Citation and punctuation omitted.) *Hinton v. Interstate Guar. Ins. Co.*, 267 Ga. 516, 517 (480 SE2d 842) (1997). See also *Smith v. Commercial Union Assur. Co.*, 246 Ga. 50, 51 (268 SE2d 632) (1980) (accord). "Uninsured motorist statutes are remedial in nature and must be broadly construed to accomplish the legislative purpose." (Citation omitted.) *Hinton v. Interstate Guar. Ins. Co.*, 267 Ga. at 518. Castellanos is the innocent driver here. Either Santiago's liability policy with United should pay, or, if

10

248 (568 SE2d 135) (2002) (noting that, where the plaintiff filed suit against another driver, alleging that he was an uninsured motorist, the plaintiff's UM carrier answered in its own name, "raising the *affirmative defense* that [the tortfeasor] may not be uninsured") (emphasis supplied).[15] We conclude that the trial court improperly shifted to Castellanos the burden of coming forward with evidence to rebut Travelers' affirmative defense that Travelers failed to support. Because the undisputed evidence does not establish that Santiago's absence from the trial was involuntary or excused or that his failure to cooperate with United did not prejudice the defense, the trial

---

that policy provides no coverage and therefore Santiago is an uninsured motorist, Arias' UM policy with Travelers should pay. The trial court's ruling, which the dissenters would affirm, provides a windfall for one of the insurers, at the expense of the innocent driver.

[15] *Willis v. Kemp*, 130 Ga. App. 758, 759 (2) (204 SE2d 486) (1974) (When the defendant admits the essential facts of a plaintiff's claim, and sets up other facts in justification or avoidance, such constitutes an affirmative defense for which the defendant has the burden of proof.); *Williamson-Inman & Co. v. Thompson*, 53 Ga. App. 821, (7) (a) (187 SE 194) (1936) (If a defendant's plea or answer admits essential facts of a petition, which show a right of recovery, but sets up other facts in justification or avoidance, or other special matters not merely elaborating or explaining a general denial, there is an affirmative defense, and the burden of proving an affirmative defense by a preponderance of the evidence rests on the defendant.); Joy T. Carmichael, 4 Ga. Proc. Evidence, § 1:18 (updated March 2014) (A defendant ordinarily has the burden of proof of establishing its affirmative defenses and must come forward with proof sufficient to establish each element of an affirmative defense.).

11

court erred in finding that Travelers is entitled to judgment as a matter of law.[16] The trial court's order is reversed, in part, to the extent it entered summary judgment in Travelers' favor.

2. Castellanos contends that the trial court erred in denying his motion for summary judgment. Because the question of bad faith is for the jury,[17] however, this argument lacks merit.

*Judgment affirmed in part and reversed in part. Phipps, C. J., Barnes, P.J., and McFadden, J., concur. Andrews, P. J., Ray and McMillian, JJ., dissent.*

---

[16] In *Southern General Ins. Co. v. Thomas*, the trial court correctly denied a UM carrier's motion for summary judgment where the liability carrier denied coverage on the basis that the tortfeasor violated the liability policy's cooperation cause by failing to appear at trial and the UM carrier did not contend that there was a genuine issue of material fact as to whether the particular circumstances of the tortfeasor's failure to cooperate would form a legally sustainable basis for the liability carrier's denial of coverage. 197 Ga. App. at 198.

[17] *Jimenez v. Chicago Title Ins. Co.*, 310 Ga. App. 9, 12 (2) (712 SE2d 531) (2011); *Certain Underwriters &c. v. Rucker Constr., Inc.*, 285 Ga. App. 844, 850 (3) (648 SE2d 170) (2007); *First Financial Ins. Co. v. American Sandblasting Co.*, 223 Ga. App. 232, 233 (2) (477 SE2d 390) (1996); *St. Paul Fire & Marine Ins. Co. v. Snitzer*, 183 Ga. App. 395, 397 (2) (358 SE2d 925) (1987).

A14A0168.  CASTELLANOS  v.  TRAVELERS  HOME  AND

    MARINE INSURANCE COMPANY.

MCMILLIAN, Judge, dissenting.

I respectfully dissent to the majority's opinion in this case because I believe it ignores long-standing principles of Georgia law and the language of the insurance policy at issue to improperly shift the burden to Travelers to prove Castellanos's claim.

The primary issue raised on appeal is the legal question of whether the insured seeking UM coverage or the UM carrier bears the burden of proving that UM coverage applies in order to survive summary judgment. It is well settled, however, that Castellanos, as the insured, had "the . . . burden to prove (1) the existence of a policy of liability insurance containing uninsured motorist protection, and (2) that [Santiago] was an uninsured motorist at the time of the [wreck]. The court could not

presume that [Santiago] was an uninsured motorist." (Citations and punctuation omitted.) *Williams v. Safeway Ins. Co.*, 223 Ga. App. 93, 94 (476 SE2d 850) (1996).[1] See also *Anthony v. Larios*, 256 Ga. App. 248, 249 (568 SE2d 135) (2002); *Hartford Accident & Indem. Co. v. Studebaker*, 139 Ga. App. 386, 388 (1) (228 SE2d 322) (1976). See also Frank E. Jenkins et al., Georgia Automobile Insurance Law § 37.22 (2013-2014 ed.).

This requirement is simply a reiteration of the principle that an insured claiming an insurance benefit "has the burden of proving that a claim falls within the coverage of the policy." *Ga. Farm Bureau Mut. Ins. Co. v. Hall County*, 262 Ga. App. 810, 812 (1) (586 SE2d 715) (2003). Thus, "[t]o establish a prima facie case on a claim under a policy of insurance the insured must show the occurrence was within the risk insured against." *Allstate Ins. Co. v. Grayes*, 216 Ga. App. 419, 420 (1) (454 SE2d 616) (1995). See *BayRock Mtg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19 (648 SE2d 433) (2007) (first element of a claim for an insurer's bad faith is proof that the claim is covered under the policy); OCGA § 33-4-6. Here, no dispute

---

[1] Although an insured must also prove the uninsured motorist's liability for the insured's damages, Santiago's liability in this case was determined in the underlying suit filed by Castellanos. See *Morton v. Horace Mann Ins. Co.*, 282 Ga. App. 734, 738 (2) (b) (639 SE2d 352) (2006) (it is well settled that injured party must first establish that driver of uninsured vehicle was legally liable); OCGA § 37-7-11.

2

exists that the Travelers' policy (the "Policy") provided UM coverage, but Travelers disputes that Castellanos carried his burden of establishing that Santiago was an uninsured motorist under its terms.

The applicable policy provisions state that Travelers agreed to "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle'" because of an insured's bodily injury or property damage caused by an accident. The Policy defines an "uninsured motor vehicle" in pertinent part as "a land motor vehicle or trailer of any type . . . [t]o which a liability bond or policy applies at the time of the accident but the bonding or insurance company . . . *[l]egally denies* coverage."[2] (Emphasis supplied.) Thus, in order to present a prima facie case that Santiago's vehicle was an uninsured motor vehicle under the policy, Castellanos bears the burden of demonstrating not only that United denied coverage, but that it *legally* denied coverage. And this Court has held that "coverage [cannot] be said to have been legally denied unless the denial is, under applicable law, legally sustainable." (Emphasis omitted.) *Hemphill v. Home Ins. Co.*, 121 Ga. App. 323, 335 (5) (174 SE2d 251) (1970). Compare *Moore v. State Farm*

---

[2] The Policy's language mirrors the statutory definition of "uninsured motor vehicle" under OCGA § 33-7-11 (b) (1) (D) (iii).

3

*Mut. Auto. Ins. Co.*, 196 Ga. App. 755, 757 (397 SE2d 127) (1990) (proof of legal

denial of coverage not required where policy did not require a legal denial of

coverage, but instead required only "'that the insurance company den(y) coverage,'"

to qualify for UM coverage).

The record reflects that United cited Santiago's lack of cooperation as the basis

for its denial of coverage,[3] and it is well settled that "[a] co-operation clause is a

material condition of a liability policy and a breach of it in any material respect

relieves the insurer of liability. The voluntary and unexcused failure of an insured to

attend a trial, after notice or request to do so, upon a claim covered by his policy of

insurance is such a breach of the clause." *H. Y. Ayers & Sons, Inc. v. St. Louis Fire

& Marine Ins. Co.*, 120 Ga. App. 800, 803 (1) (172 SE2d 355) (1969). But to

demonstrate a legal denial of coverage on the basis of a lack of cooperation in a case

between a claimant and the tortfeasor's insurer, the insurer must make a prima facie

---

[3] In response to Castellanos's demand for payment, United's counsel originally told him that United was prepared to pay the compensatory damages portion of the judgment in exchange for a satisfaction of judgment but would not pay the remainder of the award, asserting that Arias's policy did not cover punitive damages. Castellanos's counsel countered that Castellanos would provide only a partial satisfaction of judgment in response to the insurer's payment of only part of the judgment. In response to this counteroffer, United wrote Castellanos to inform him that it was denying coverage based on Santiago's lack of cooperation.

4

showing "(a) that it reasonably requested its insured's cooperation in defending against the plaintiff's claim, (b) that its insured wilfully and intentionally failed to cooperate, and (c) that the insured's failure to cooperate prejudiced the insurer's defense of the claim." (Citations omitted.) *Vaughan v. ACCC Ins. Co.*, 314 Ga. App. 741, 742-743 (2) (725 SE2d 855) (2012). See also *Liberty Mut. Ins. Co. v. Coburn*, 129 Ga. App. 520, 525 (3) (200 SE2d 146) (1973) (physical precedent only); *Cotton States Mut. Ins. Co. v. Proudfoot*, 123 Ga. App. 397, 397 (3) (181 SE2d 305) (1971); *H. Y. Ayers*, 120 Ga. App. at 804-805 (3); OCGA § 33-7-15 (b). An insurer does not meet this burden merely by demonstrating that the insured failed to appear at trial. *Coburn*, 129 Ga. App. at 525 (3); *Proudfoot*, 123 Ga. App. at 397 (3). Because Castellanos chose not to add United as a party defendant or to obtain a prior determination that a legal denial of coverage occurred, as between Castellanos and Travelers, he necessarily bears the burden of proving that United legally denied coverage to Santiago as part of his prima facie claim for UM coverage. See *Anthony*, 256 Ga. App. at 249; *Williams*, 223 Ga. App. at 94; *Hartford*, 139 Ga. App. at 388.

Travelers sought summary judgment on the ground that Castellanos failed to present evidence to support any of the three elements required to prove the lack of cooperation required for establishing a legal denial of coverage. It is well settled that

5

a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).

Castellanos initially argued below that he carried his burden of proof merely by showing that Santiago failed to attend the trial, which he asserted showed per se prejudice to United. But following the hearing on the motion for summary judgment, Castellanos's attorney submitted a post-hearing brief and his own affidavit making additional assertions, apparently in support of the first two required elements for a lack of cooperation.[4] Castellanos's counsel asserted that (1) Travelers's counsel never disputed United's counsel's claim that Santiago's January 22, 2010 response to

---

[4] In the affidavit, the attorney averred that "[t]he facts alleged by me in Plaintiff's Reply Brief to Defendant's Post-Hearing Brief as to the attached pleadings as Exhibits and my conversations with United's . . . [attorney] in the underlying case are true and based upon my personal knowledge." Although the affidavit was a clear attempt to affirm hearsay as fact, Travelers raised no objection below, and thus the averments containing hearsay must be considered as evidence. See OCGA § 24-8-802.

6

interrogatories were incomplete and not verified due to Santiago's lack of cooperation, thus giving Travelers notice that Santiago was not cooperating two years before trial; (2) Santiago's counsel stated that he did not supplement the interrogatory responses because he was unable to locate an address or telephone number for Santiago after he was served with the original complaint; (3) a November 7, 2010 affidavit from the son of another defendant was filed in the underlying action stating that Santiago did not reside at the address noted on the sheriff's return of service for him; and (4) the same address was listed on the insured vehicle's registration and the driver's license Santiago showed to police.

But neither these assertions nor any other evidence of record provide proof of any efforts made by United to locate Santiago, to obtain his cooperation, or to secure his attendance at trial. Accordingly, Castellanos failed to carry his burden of establishing that an issue of fact exists as to whether United "exercised good faith and diligence in an effort to procure the attendance of the insured at the trial," *H. Y. Akers*, 120 Ga. App. at 804 (3), or to otherwise secure his cooperation. See *Liberty Mutual*, 129 Ga. App. at 525 (3) (where insured has no knowledge of suit and insurer with full knowledge of suit fails to make any effort to contact insured, insurer cannot defend claims based on lack of cooperation).

7

The record also contains no evidence demonstrating, or raising an inference of, an intentional or wilful refusal by Santiago to comply with any request by United for cooperation.[5] Without such evidence, the trial court could not presume Santiago's actions in that regard reflect a wilful and intentional failure to cooperate. See *Cowart*, 287 Ga. at 633 (3) (c) (motion for summary judgment cannot be denied "based on speculation or conjecture"); *Proudfoot*, 123 Ga. App. at 397 (3) (where no evidence was presented as to why insured did not appear at trial, even in light of evidence of conversations in which insured told her insurer that she planned to be at trial, insured failed to show a wilful or intentional refusal to cooperate); *Liberty Mutual*, 129 Ga. App. at 525 (3).

Because Castellanos failed to present evidence creating a material issue of fact as to the first two requirements for showing a legal denial of coverage by United,[6] his

_____

[5] To the contrary, Castellanos's counsel represented that United's counsel told the jury in the prior litigation that Santiago had no idea that the trial was taking place. This led to a sustained objection on the ground that United was addressing facts not in evidence in its argument. As the objection indicates, Castellanos's counsel was well aware that such representations are not evidence.

[6] I note that this burden is not unduly onerous. Castellanos could have named both United and Travelers as party defendants and sought a declaration as to which insurer had liability for his claims, thus placing the burden on United to prove a legal denial of coverage. At the very least he could have deposed United's counsel to determine what efforts he made to secure Santiago's cooperation. But Castellanos

claim to recover UM benefits against Travelers fails, and I would not address the final requirement of showing prejudice. See *Young v. Oak Leaf Builders, Inc.*, 277 Ga. App. 274, 278 (3) (626 SE2d 240) (2006) (when evidence as to any one essential element of claim is lacking, the claim fails and summary judgment is proper). Accordingly, I would find that the trial court properly granted Travelers's motion for summary judgment as to Castellanos's claims.

The majority's analysis erroneously shifts the burden of proving Castellanos's prima facie case to Travelers. The majority asserts that Castellanos made out a prima facie claim merely by showing that Travelers provided him UM coverage, that he is legally entitled to recover from Santiago for the injuries he sustained in the accident, that United denied coverage on the basis of Santiago's lack of cooperation, and that proof of Santiago's failure to attend the trial is alone sufficient to show a lack of cooperation. But as discussed above, proof that an insured failed to attend trial is insufficient to establish the lack of cooperation necessary to establish a legal denial of coverage. Rather, it requires proof, at the very least, that the insurer made good faith efforts to secure the insured's attendance and/or cooperation. Such evidence is completely lacking in this case. Although the majority argues that this is not a case

---

took no such action.

9

in which this Court is asked to presume that Santiago is an uninsured motorist, the majority's analysis would actually require that the Court make a series of presumptions based solely on Santiago's failure to attend the trial – that United made good faith efforts to secure Santiago's cooperation and/or attendance at trial, that his nonattendance and lack of cooperation was wilful or intentional, and thus that United legally denied him coverage – in order to find that Santiago was an insured motorist under the terms of the Policy.

Significantly, the majority fails to cite any authority to support its argument that the evidence of record is sufficient to make out a prima facie case for a *legal* denial of coverage. The case of *Southern General Ins. Co. v. Thomas*, 197 Ga. App. 196, 197 (397 SE2d 624) (1990), upon which the majority relies is readily distinguishable. In that case, before suing his own UM insurer, the insured first obtained a judgment against the tortfeasor and then pursued an "unsuccessful" garnishment action against the tortfeasor's insurer, which had denied coverage based on the tortfeasor's lack of cooperation. Id. at 196. It is entirely possible, if not presumable, that the garnishment action was unsuccessful because the tortfeasor's insurer established that it legally denied coverage. But in any event, the UM carrier did not dispute that a legal denial of coverage had occurred. Instead, it argued that

10

even given a legal denial of coverage, the insured was not entitled to UM coverage on other grounds. Id. at 198. Accordingly, *Thomas* does not support the majority's analysis.

The majority also fails to cite any authority to support shifting the burden to an UM insurer to make out its insured's prima facie case for coverage, because no such authority exists. Indeed, to make the radical shift in the law the majority is suggesting would require the overruling of longstanding Georgia case law and would necessitate appellate review by all 12 judges of this Court. OCGA § 15-3-1 (d). Contrary to the majority's analysis, an insurer, like Travelers, who merely points to an insured's lack of evidence to support his claim for coverage is not asserting an affirmative defense. Rather, it is simply arguing for summary judgment under the applicable standard for a party who will not bear the burden of proof at trial by pointing to its opponent's failure to make out his prima facie case. Although the majority contends that Travelers's argument on summary judgment equates with an affirmative defense because once this Court shifts the burden of proof to the insurer to make out its insured's prima facie case, the insurance company will have to set up additional facts in justification of the other insurer's denial of coverage. Accordingly, the majority justifies shifting the burden to Travelers by arguing that it is asserting an affirmative

11

defense, but it only becomes an affirmative defense because the majority has shifted the burden to the insurer. This circuitous reasoning is not supported by Georgia law.

Accordingly, I would affirm the trial court's order granting summary judgment to Travelers.

I am authorized to state that Presiding Judge Andrews and Judge Ray join in this dissent.